SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**MEREDITH D.M. BATEMAN, OSB #192273**
Assistant United States Attorney
meredith.bateman@usdoj.gov
**ETHAN G. BODELL, PA #321830**
Special Assistant United States Attorney
ethan.bodell@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00235-AB-1** |
| v. | **UNITED STATES' TRIAL MEMORANDUM** |
| **BENIAMIN LUCESCU,** | |
| **Defendant.** | |

Plaintiff United States of America submits its trial memorandum in accordance with the

Court's Criminal Trial Management Order (ECF No. 83).

///

///

///

///

///

**United States' Trial Memorandum**                                              **Page i**

The United States respectfully requests leave to file additional memoranda as may become appropriate before or during trial.

Dated: July 31, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Meredith D.M. Bateman*
MEREDITH D.M. BATEMAN
Assistant United States Attorney

*/s/ Ethan G. Bodell*
ETHAN G. BODELL
Special Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**United States' Trial Memorandum**                                    **Page ii**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................................ 2

    A. Defendant's Scheme to Defraud the U.S. Small Business Administration ................. 2

    B. The SBA's Investigation of Defendants' Scheme to Defraud .................................... 3

III. ELEMENTS OF THE CHARGED OFFENSES ....................................................... 6

A. Conspiracy to Commit Wire Fraud (Count One) ............................................................ 6

B. Wire Fraud (Counts Two through Four) .......................................................................... 7

C. Conspiracy to Commit Money Laundering (Count Five) ................................................ 7

D. Money Laundering (Counts Six through Eight) .............................................................. 8

IV. TRIAL AND PRETRIAL FILINGS ........................................................................... 8

    A. Trial Date and Length ................................................................................................ 8

    B. Stipulations ................................................................................................................ 8

    C. Jury Instructions and Verdict Form ........................................................................... 9

    D. Witnesses and Exhibits .............................................................................................. 9

    E. Motions *in Limine* ................................................................................................... 11

    F. Pretrial Notices ........................................................................................................ 11

V. LEGAL AND EVIDENTIARY ISSUES .................................................................... 11

    A. Co-Conspirator Statements ...................................................................................... 11

    B. Marital Privilege ...................................................................................................... 12

    C. Third-Party (Non-Witness) Statements ................................................................... 13

    D. Summary Exhibits and Witnesses ........................................................................... 14

    E. Illustrative Aids ....................................................................................................... 15

    F. *Jencks* Material ...................................................................................................... 16

    G. Not Calling Specific Witnesses at Trial .................................................................. 16

VI. FORFEITURE ............................................................................................................. 17

VII. CONCLUSION ........................................................................................................... 17

## TABLE OF AUTHORITIES

### Cases

*Bourjaily v. United States*, 483 U.S. 171 (1987) ...........................................................11

*Orsini v. O/S Seabrooke O.N.*, 247 F.3d 953 (9th Cir. 2001) .........................................14

*Paddock v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984) ................................15

*United States v. Alahmedalabdaloklah,* 94 F.4th 782 (9th Cir. 2024) .............................12

*United States v. Allen,* 159 F. 4th 625 (9th Cir. 2025) .....................................................10

*United States v. Anekwu,* 695 F.3d 967 (9th Cir. 2012) ...................................................10

*United States v. Bagley*, 722 F.2d 482 (9th Cir. 1985) .....................................................17

*United States v. Barragan,* 871 F.3d 689 (9th Cir. 2017) .................................................13

*United States v. Beecroft*, 608 F.2d 753 (9th Cir. 1979) ..................................................14

*United States v. Cabrera*, 201 F.3d 1243 (9th Cir. 2000) ................................................17

*United States v. Castillo*, 866 F.2d 1071 (9th Cir. 1988) .............................................16–17

*United States v. Castro*, 887 F.2d 988 (9th Cir. 1989) .....................................................14

*United States v. Drago*, 2015 WL 4748840 (D. Nev. Aug. 11, 2015) .............................10

*United States v. Falsia*, 724 F.2d 1339 (9th Cir. 1983) ...................................................17

*United States v. Fleishman*, 684 F.2d 1329 (9th Cir. 1982) .............................................16

*United States v. Johnson*, 594 F.2d 1253 (9th Cir. 1979) .................................................15

*United States v. Johnson,* 875 F.3d 1265 (9th Cir. 2017) .................................................14

*United States v. Kuzmenko*, 2014 WL1334003 (E.D. Cal. Apr. 3, 2014) .........................10

*United States v. Marashi*, 913 F.2d 724 (9th Cir. 1990) ...............................................12–13

*United States v. Montgomery*, 384 F.3d 1050 (9th Cir. 2004) ..........................................12

*United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991) ................................................12

## Cases (cont.)

*United States v. Reyes*, 966 F.2d 508 (9th Cir. 1992)........................................................16

*United States v. Siders*, 712 F. App'x 601 (9th Cir. 2017)...............................................10

*United States v. Testa*, 548 F.2d 847 (9th Cir. 1977).......................................................12

*United States v. Valerio*, 441 F.3d 837 (9th Cir. 2006) ...................................................13

*United States v. Weiland,* 420 F.3d 1062 (9th Cir. 2005).................................................10

*United States v. Wentz*, 456 F.2d 634 (9th Cir. 1972) ......................................................12

*United States v. Williams*, 990 F.2d 507 (9th Cir. 1993)..................................................17

*United States v. Yarborough*, 852 F.2d 1522 (9th Cir. 1988)...........................................12

## Statutes

18 U.S.C. § 1343.................................................................................................... 1, 7

18 U.S.C. § 1349.................................................................................................... 1, 6

18 U.S.C. § 1956(h) ............................................................................................... 1, 7

18 U.S.C. § 1957.................................................................................................... 1, 8

## Federal Rules of Criminal Procedure

Fed. R. Crim. P. 32.2 .............................................................................................18

## Federal Rules of Evidence

Fed. R. Evid. 107 ..................................................................................................15

Fed. R. Evid. 401 ....................................................................................................9

Fed. R. Evid. 403 ....................................................................................................9

Fed. R. Evid. 404 ..................................................................................................11

Fed. R. Evid. 609 ..................................................................................................11

Fed. R. Evid. 801 ..............................................................................................11–13

Fed. R. Evid. 803 ...........................................................................................9–11, 14

**United States' Trial Memorandum**                                         **Page v**

## Federal Rules of Evidence (cont.)

Fed. R. Evid. 901 ................................................................................................................9

Fed. R. Evid. 902 ............................................................................................................9–11

Fed. R. Evid. 1006 ..........................................................................................................15

## Ninth Circuit Model Criminal Jury Instructions

Model Instruction 6.5....................................................................................................16

Model Instruction 11.1....................................................................................................6

Model Instruction 15.35..................................................................................................7

Model Instruction 18.7....................................................................................................7

Model Instruction 18.7A..................................................................................................7

I.      INTRODUCTION

Defendant Beniamin Lucescu ("defendant") and his co-defendant wife, Georgeta Lucescu ("Ms. Lucescu") (collectively, "defendants") fraudulently obtained $487,000 in taxpayer money from a Congressionally-created emergency fund that was intended to provide loans to help small businesses impacted by COVID-19 meet their regular and necessary operating expenses. Although defendants ran a legitimate business, Rose City Senior Care, LLC ("Rose City") they repeatedly lied on three Economic Injury Disaster Loan ("EIDL") applications about how they were going to use the loan proceeds—claiming the funds were necessary to alleviate harm to Rose City caused by the pandemic and claiming the funds would not be used for personal use. In truth, defendants knew they were going to use the money to pay off their old personal federal tax debt and invest in cryptocurrency and knew those uses were prohibited.

While defendants lined their pockets with more than $487,000 in hopes of getting out of debt and making it big, many small businesses in dire need of that money never received it because the money ran out. For his misconduct, defendant has been charged in a Superseding Indictment with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, three counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and three counts of money laundering in violation of 18 U.S.C. § 1957. Trial is set to begin on September 8, 2026. The United States submits this Trial Memorandum to provide the Court with a factual background on the case and outline potential legal issues that the United States currently expects to arise at the pretrial conference or trial.

**United States' Trial Memorandum**                                    **Page 1**

II.     **FACTUAL BACKGROUND**

The United States anticipates that the evidence at trial will establish the following facts, among others, beyond a reasonable doubt.

A.     **Defendant's Scheme to Defraud the U.S. Small Business Administration**

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. As part of the CARES Act, the Small Business Administration ("SBA") expanded the Economic Injury Disaster Loan ("EIDL") program to provide loan assistance to small businesses suffering financial hardship caused by the pandemic. The purpose of the EIDL program was to help businesses impacted by COVID-19 to pay certain qualifying business expenses that the business could have paid had the pandemic not occurred. Working capital and normal operating expenses included regular expenses like health care benefits, rent, utilities, and fixed business debt payments.

Because the EIDL program was an emergency program intended to expedite relief funds to small businesses to help them survive the effects of the pandemic, the loan applications required certain borrower representations, which the SBA relied on in approving the applications and calculating loan amounts.

Beginning in April 2020, defendants devised a scheme to fraudulently obtain taxpayer money under the EIDL program. Defendants executed this scheme to defraud beginning no later than on or about April 6, 2020, and continuing until at least on or about May 1, 2022, by submitting a series of EIDL applications that contained false representations. In each application, defendant or Ms. Lucescu made the following misrepresentations:

**United States' Trial Memorandum**                                                    **Page 2**

- "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by the disaster occurring in the month of January 31, 2020 and continuing thereafter"

- "All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan."

- "Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in conjunction with the effects of the COVID-19 emergency."

- "(e) none of the Obligations are or will be primarily for personal, family or household purposes."

Despite these repeated assertions, as detailed below, defendants always intended to use the EIDL proceeds to pay off old personal federal tax debt they had been neglecting and to invest in cryptocurrency, which is exactly what they did.  As a result of these false representations and certifications, the SBA funded all three EIDLs, and defendants made off with $487,000 in taxpayer money.

###### B.      The SBA's Investigation of Defendants' Scheme to Defraud

On August 1, 2011, in *United States v. Beniamin Lucescu*, 3:09-cr-00247-MO, defendant was sentenced for his convictions of bank fraud and wire fraud to 1 day in prison for each of the five counts, to be served concurrently, supervised release of 5 years, and restitution of $365,059.93.  This sentence stems from defendant's 2006 conduct as a mortgage loan broker where he knowingly completed and processed five loan applications for a borrower whom defendant knew to be unqualified.  To make the loan applications appear worthy of funding,

**United States' Trial Memorandum**                                    **Page 3**

defendant personally included materially false information on the applications, including (among other misrepresentations) the purpose of each loan.

Despite his hefty restitution obligations, as of November 2022, defendant had paid only $16,500. After discovering that defendants had applied for and received EIDL loans, which they then used to pay off personal tax debt and invest in cryptocurrency, the United States Attorney's Office (USAO) sought a writ of garnishment in November 2022. Defendant fought the garnishment and on January 9, 2023, he submitted a memorandum to the court where he explained he and Ms. Lucescu applied for the EIDLs intending to use the proceeds to pay off tax debts and invest in cryptocurrency. Gov. Ex. 9. During the garnishment hearing, defendant swore "under the penalty of perjury that what [he] submitted to the Court already in writing in this case [in that memorandum] was true." Gov. Ex. 10.

The SBA initiated an investigation into defendants' loans after receiving a referral from the USAO's Asset Recovery and Money Laundering Unit that handled the garnishment hearing. The investigation revealed that the loan application representations discussed above were false because defendants knew the EIDL proceeds could only be used to help Rose City survive financial hardship caused by the pandemic but instead always intended to use the proceeds to pay off old tax debts and invest in cryptocurrency.

Faced with over $100,000 of old state and federal tax debt, over $350,000 remaining in criminal restitution, and the "declining conditions in [their] neighborhood," defendants sought a "solution for [their] future." Gov. Ex. 9. This "solution" was to steal EIDL funds to pay down their debt and invest in cryptocurrency.

In early April 2020, defendants learned of the EIDL program and immediately created the intake application. Defendants were repeatedly informed that EIDL funds were to be used to pay

**United States' Trial Memorandum** **Page 4**

business expenses caused by the pandemic.  The loan documentation itself made clear that the funds were for "disaster losses," "disaster-related damages," "injury caused by [the] disaster," and that the loan was taken out "in connection with the effects of the COVID-19 emergency." Gov. Ex. 1.  It also twice advised of potential penalties for a borrower who "wrongfully misapplies the proceeds" of an EIDL.  *Id.*  Knowing this, on August 6, 2020, Ms. Lucescu signed the first Loan Authorization and Agreement ("LA&A") on Rose City's behalf.  On it, she certified (among other things) that Rose City would use the loan as "working capital to alleviate economic injury caused by" COVID-19 and "none of the [funds] are or will be primarily for personal, family or household purposes."  *Id.*  Within two weeks of receiving $56,500, defendant paid off over $38,000 in his and his wife's personal federal tax debt for years 2010, 2011, and 2018, including thousands in interests and penalties that accrued for nonpayment.  A month later defendant paid off another almost $15,000 for tax year 2017, again including thousands in interests and penalties.

A few months later, between February and April 2021, inspired by defendant's brother's success in cryptocurrency, defendants opened cryptocurrency accounts.  On defendant's Prime Trust individual application, he stated the purpose was "[o]ccassional, personal trading to speculate on virtual currency prices" and that the "sources" of the funds he would use were "salaries, wages, contract work payments, etc.; Personal savings."  Gov. Ex. 25.  In the midst of setting up their cryptocurrency accounts, Ms. Lucescu requested and accepted an offer to amend the initial EIDL.  In August 2021, both defendant and Ms. Lucescu signed the amended LA&A with the same provisions and the same misrepresentations ("EIDL Mod. #1") and received $143,400.  A month later, in September 2021, defendant used some of that money to pay off almost $25,000 in his and his wife's personal federal tax debt, including interests and penalties,

for years 2015 and 2016, transferred $55,000 of that money to their newly opened joint personal bank account, then sent $55,000 to his personal cryptocurrency account, which he characterized as a "[p]ersonal loan from proceeds of business loan."

By the end of 2021, defendant's cryptocurrency investments had failed, but he and his wife "believed so strongly" their investments would improve, Gov. Ex. 9, that they signed a another amended EIDL LA&A with the same provisions and the same misrepresentations and accepted a second modification for $287,800 ("EIDL Mod. #2") in mid-2022. The day after they received the money, they transferred it to their personal bank account, again characterized it as "[p]ersonal loan from proceeds of business loan" and again sent it to defendant's personal cryptocurrency account.

In total, defendant and Ms. Lucescu stole $487,000 of taxpayer money to pay off personal federal tax debt (including interests and penalties) incurred years prior to the pandemic and invest in cryptocurrency.

## III.    ELEMENTS OF THE CHARGED OFFENSES

### A.    Conspiracy to Commit Wire Fraud (Count One)

Defendant is charged with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The elements of conspiracy to commit wire fraud are as follows:

First, there was an agreement between two or more persons to commit the crime of wire fraud; and

Second, defendant became a member of that conspiracy knowing of at least one of its objects and intending to help accomplish it. *See* Ninth Circuit Jury Instruction 11.1.

**United States' Trial Memorandum**                                                          **Page 6**

### B.     Wire Fraud (Counts Two through Four)

Defendant is charged with three counts of wire fraud, in violation of 18 U.S.C. § 1343. The elements of wire fraud are as follows:

First, defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

*See* Ninth Circuit Jury Instruction 15.35 (Wire Fraud).

### C.     Conspiracy to Commit Money Laundering (Count Five)

Defendant is charged with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  The elements of conspiracy to commit money laundering are as follows:

First, there was an agreement to commit money laundering;

Second, the defendant knew the objective of the agreement; and

Third, the defendant joined the agreement with the intent to further its unlawful purpose.

*See* Ninth Circuit Jury Instruction 18.7A (Money Laundering Conspiracy).

**United States' Trial Memorandum**                                              **Page 7**

D.    **Money Laundering (Counts Six through Eight)**

Defendant is charged with three counts money laundering, in violation of 18 U.S.C. § 1957.  The elements of money laundering are as follows:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from wire fraud; and

Fifth, the transaction occurred in the United States.

*See* Ninth Circuit Jury Instruction 18.7 (Money Laundering).

## IV.    TRIAL AND PRETRIAL FILINGS

A.    **Trial Date and Length**

A jury trial is set for September 8, 2026.  The United States estimates that its case-in-chief, including anticipated cross examination, will last four to five days.  Based on a conferral with counsel, defendant expects his defense will last one day.

B.    **Stipulations**

To date, the parties anticipate reaching two stipulations but continue to confer on wording.  First, to satisfy the fourth element of wire fraud, the parties anticipate stipulating that the three charged EIDL applications were sent from Oregon through interstate wire.  Second, to satisfy the fifth element of money laundering, the parties anticipate stipulating the charged money laundering transactions occurred in the United States.  The parties will file the stipulations as soon as wording has been agreed upon.

**United States' Trial Memorandum**                                          **Page 8**

### C.    Jury Instructions and Verdict Form

The parties jointly filed a Proposed Verdict Form and Jury Instructions concurrently with this Trial Memorandum.  There are no objections to the Proposed Verdict Form, and objections to the Jury Instructions are noted therein as instructed in the Criminal Trial Management Order (ECF 83).

### D.    Witnesses and Exhibits

The United States filed a Witness List that identifies six witnesses it currently anticipates testifying during its case-in-chief and an Exhibit List identifying about 140 exhibits that the United States currently anticipates admitting in its case-in-chief or using for another purpose, such as impeachment or refreshing recollection.  The United States reserves the right to amend either list as needed and to present additional evidence and witnesses on rebuttal.

The parties have agreed that the United States does not need to call custodian witnesses to authenticate documents that are self-authenticating under Rule 902 and 803(6), including the EIDL applications (Gov. Exs. 1-3), court records (Gov. Exs. 5-10), tax records (Gov. Exs. 12-17), bank records (Gov. Exs. 20-22), cryptocurrency records (Gov. Exs. 24-25), and e-mail records obtained through a search warrant (Gov. Ex. 27-129).[1]

Federal Rule 901(a) provides that to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  In turn, Rule 902 provides for categories of evidence that are "self-authenticating," that is, those that "require no extrinsic evidence of authenticity in order to be

---

[1] All other available objections remain available to the defendant at the appropriate time, such as objections under Rule 401 for relevancy or Rule 403 for unfair prejudice.

**United States' Trial Memorandum**                                                    **Page 9**

admitted." Fed. R. Evid. 902.  Included in the categories of self-authenticating evidence, under Rule 902(11), are certified domestic records of a regularly conducted activity, which are records that include a certification of the custodian or another qualified person that meets the requirements of Rule 803(6)(A)-(C).  Fed. R. Evid. 902(11).  Rule 803(6) specifies that the certificate should confirm that the record was made at or near the time by (or from information transmitted by) someone with knowledge, that the record was kept in the course of a regularly conducted activity by a business or other organization, and that making the record was a regular practice of that activity.  Fed. R. Evid. 803(6).  A certification for each record that meets the requirements of 803(6) and 902(11) has been received by the United States and provided to defense.  As such, the underlying records are self-authenticating, *United States v. Allen,* 159 F. 4th 625, 633 (9th Cir. 2025), and admissible without live witness testimony.  *See United States v. Siders*, 712 F. App'x 601, 601–02 (9th Cir. 2017) (concluding district court did not err in admitting "fraudulent loan files into evidence as business records under Federal Rule of Evidence 803(6) . . . [and] under Federal Rule of Evidence 902(11)."); *United States v. Drago*, No. 2:13-CR-334, 2015 WL 4748840, at *3 (D. Nev. Aug. 11, 2015) (granting government's pretrial motion in limine under Rules 902(11) and 803(6) to "introduce bank records, certified business records, and other public records as evidence of defendant's fraud"); *United States v. Kuzmenko*, No. 2:12-CR-00062, 2014 WL 1334003, at *2 (E.D. Cal. Apr. 3, 2014) ("bank records, loan files, and escrow files are admissible as business records, pursuant to FRE 803(6).").  Admission of non-testimonial records and their certifications does not violate the Confrontation Clause.  *United States v. Anekwu,* 695 F.3d 967, 976-77 (9th Cir. 2012); *United States v. Weiland,* 420 F.3d 1062, 1076-77 (9th Cir. 2005).

**United States' Trial Memorandum**                                      **Page 10**

The identified records from the SBA, the District Court, the IRS, and defendant's accountant, financial institutions, and cryptocurrency exchanges, and e-mail records are self-authenticating business records under Rule 902(11) and qualify for the hearsay exception under Rule 803(6).

### E.     Motions *in Limine*

The United States filed an omnibus motion *in limine* that includes 9 motions.  The United States reserves the right to file additional motions *in limine* as needed.

### F.     Pretrial Notices

Concurrently with this Trial Memorandum, the United States filed 404(b) and 609(b) notices relating to defendant's prior convictions and a notice of intent to introduce testimony of Amber Andersen and Colleen Anderson.

## V.     LEGAL AND EVIDENTIARY ISSUES

### A.     Co-Conspirator Statements

The United States anticipates introducing statements of Ms. Lucescu that were made during and in furtherance of the conspiracy, such as e-mails from Ms. Lucescu to the SBA.

Under Rule 801(d)(2)(E), a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."  Before admitting a co-conspirator's statement under this rule, the United States must prove by a preponderance of the evidence that "there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy.'"  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  In making this assessment, the Court may consider the statement itself but there must also be

independent evidence that the conspiracy existed.  *United States v. Alahmedalabdaloklah,* 94 F.4th 782, 834 (9th Cir. 2024).

"Narrations of past events are inadmissible, but expressions of future intent or statements that further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy are admissible."  *Alahmedalabdaloklah,* 94 F.4th at 934 (*citing United States v. Yarborough*, 852 F.2d 1522, 1535 (9th Cir. 1988)). The focus should be on the declarant's intent to further the objectives of the conspiracy rather than the actual effect in advancing the goals of the conspiracy.  *See United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991).  Furthermore, co-conspirator statements before or after the conspiracy may be relevant to proving the existence and the aims of the charged conspiracy.  *United States v. Testa*, 548 F.2d 847, 852 (9th Cir. 1977); *United States v. Wentz*, 456 F.2d 634, 637 (9th Cir. 1972) ("evidence of acts of co-conspirators which occurred after the entire conspiracy had ended and was complete may be introduced against all of the co-conspirators if the evidence tends to prove the existence of the conspiracy.").  And the statements need not be made to another member of the conspiracy to come within 801(d)(2)(E).  *See Alahmedalabdaloklah,* 94 F.4th at 834.

### B.     Marital Privilege

Defendant previously raised the possibility of the marital communications privilege becoming an issue during trial.  That privilege "(1) extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications, *i.e.*, those not made in the presence of, or likely to be overheard by, third parties."  *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004); *United States v. Marashi*, 913 F.2d 724, 729–30 (9th Cir. 1990).  Both spouses share the marital communications privilege, so the non-testifying spouse may invoke it.  *Marashi,* 913 F.2d at 729.  As that

**United States' Trial Memorandum**                                                                   **Page 12**

privilege "obstructs the truth-seeking process," the Ninth Circuit has construed it narrowly in criminal proceedings "because of society's strong interest in the administration of justice." *Id.* at 730. Accordingly, there is a well-established exception that the "marital communications privilege does not apply to statements made in furtherance of joint criminal activity." *Id.* at 730–31 ("Every circuit addressing the issue has held the marital communications privilege does not apply to communications having to do with present or future crimes in which both spouses are participants.") (citing cases).

The United States does not anticipate introducing any evidence that would impede on defendants' marital communications privilege but will raise the issue with defense and the Court should this position change.

### C.    Third-Party (Non-Witness) Statements

The United States also intends to introduce statements of individuals in conversations with defendants that are not offered for their truth but rather to provide context for what defendants said or did; thus, they are not hearsay. Fed. R. Evid. 801(c); *see also United States v. Barragan,* 871 F.3d 689, 705 (9th Cir. 2017) (affirming admission—with court instruction that jury not consider statements for their truth—of recordings that included informant's statements offered only for context); *United States v. Valerio*, 441 F.3d 837, 844 (9th Cir. 2006) (informant's statements on a recording are admissible to give context to defendant's statements). For example, Gov. Ex. 16 is a log maintained by the IRS documenting calls from taxpayers. Defendant's statements are admissible as party-opponent admissions and the IRS representative's statements are admissible to provide context for what defendant said or did.

Similarly, non-witness statements may be offered not for their truth but for the effect they have on the listener. For instance, the United States anticipates that the case agent will testify to

**United States' Trial Memorandum**                                                    **Page 13**

things he learned during the case investigation from speaking with other agents and third parties, not for the truth of the matter asserted, but to lay the foundation for what he and other agents did in response to learning that information. Such out-of-court statements are not hearsay. *See United States v. Johnson,* 875 F.3d 1265, 1279 (9th Cir. 2017) (recognizing course-of-the-investigation exception to the hearsay rule when relevant to the case and if accompanied by a proper limiting instruction); *United States v. Castro*, 887 F.2d 988, 1000 (9th Cir. 1989) (holding that statements introduced to show that a party had certain information, rather than for the truth of the information, are not hearsay); *Orsini v. O/S Seabrooke O.N.*, 247 F.3d 953, 960 n.4 (9th Cir. 2001) ("although in part Orsini recites statements of crew members, the crew members' statements in Orsini's affidavit are not hearsay because they are relevant to Orsini's state of mind and the effects those statements had on him, not the truth of the matters asserted.").

Additionally, some of the witnesses' statements may be admissible for another non-hearsay purpose, such as to demonstrate defendant's intent to deceive and cheat, rather than to be offered for the truth of the matter asserted. And some government witnesses may relay defendant's false statements, which would fall outside of the hearsay rule altogether; they would be offered because they are false, not for their truth. *See Orsini*, 247 F.3d at 960 n.4; *United States v. Beecroft*, 608 F.2d 753, 760–61 (9th Cir. 1979) (admitting evidence of report offered for non-hearsay purpose of showing defendant's knowledge of its contents and awareness of misrepresentations); Fed. R. Evid. 803(3).

### D.    Summary Exhibits and Witnesses

To streamline the presentation of evidence for the jury, the United States intends to use summary exhibits in its case-in-chief. The United States intends to call Federal Bureau of Investigation Forensic Accountant Amber Andersen and Litigation Financial Analyst Colleen

**United States' Trial Memorandum**                                                    **Page 14**

Anderson to testify and lay the foundation for summaries of voluminous records, including tax return information, bank records, and cryptocurrency records.  The United States has concurrently filed with this Trial Memorandum a Notice of Intent about Ms. Andersen and Ms. Anderson's anticipated testimony.

Under Rule 1006, a summary chart may be admitted as substantive evidence when voluminous records cannot be conveniently examined in court.  The proponent of a summary chart under Rule 1006 must also establish the admissibility of the underlying documents as a condition precedent to introduction of the summary chart.  *United States v. Johnson*, 594 F.2d 1253, 1257 (9th Cir. 1979).  The underlying documents themselves need not be admitted.  Rule 1006, Advisory Committee Notes, 2024 Amendments.  The proponent must further establish that the underlying documents were made available to the opposing part for inspection.  *Paddock v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984).  The underlying records used by Ms. Andersen or Ms. Anderson in preparation of the summary charts have been produced to defendant.

### E.      Illustrative Aids

In addition to summary charts, the United States intends to use illustrative aids to assist the jury in understanding the records in its case-in-chief, including during opening and closing arguments.  The Court has discretion under the recently added Federal Rule of Evidence 107 to allow the use of illustrative aids—which are not admitted into evidence—as testimonial aids. *See* Rule 107(a) ("The court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time.")  The United States has not yet finalized its illustrative aids

**United States' Trial Memorandum**                                                    **Page 15**

for trial purposes but will show them to defense counsel ahead of time so that the Court will have a chance to hear and rule on any objections before trial.

### F.     *Jencks* Material

The parties agreed to a July 31, 2026 early disclosure of *Jencks* statements.  As of this filing, the parties have each provided all known *Jencks* material.

### G.     Not Calling Specific Witnesses at Trial

The United States is still determining which witnesses it will call at trial.  The United States may not ultimately call a particular witness.  If defendant asserts at trial, including in his closing arguments, that the United States should have called a specific witness (and chooses not to call that witness himself) and consequently argues that the United States cannot meet its burden without that testimony, the United States is providing notice that such an action opens the door to the following rebuttal argument.

The Ninth Circuit's model criminal jury instructions provide that the United States' burden is to leave the jury "firmly convinced" of a defendant's guilt.  Mod. Crim. Instr. 6.5.  To meet its burden at trial, the United States need not present every imaginable witness or every shred of possible evidence.  Under circumstances where a defendant asserts that the United States should have called a specific witness, that opens the door for the United States to make the jury aware that defendant has subpoena power to call that witness too.  A "'prosecutor may properly comment upon a defendant's failure to present witnesses so long as it is not phrased to call attention to defendant's own failure to testify.'"  *United States v. Castillo*, 866 F.2d 1071, 1083 (9th Cir. 1988) (*quoting United States v. Fleishman*, 684 F.2d 1329, 1343 (9th Cir. 1982)),; *see also United States v. Reyes*, 966 F.2d 508, 509 (9th Cir. 1992) ("While prosecutors may not comment on a defendant's failure to testify, they may comment on the defense's failure to call

United States' Trial Memorandum                                                                Page 16

other witnesses."); *United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000) (prosecutor's comment on defendant's failure to call a witness "did not shift the burden of proof or persuasion"). "The test is whether the comment is 'manifestly intended to call attention to the defendant's failure to testify, and is . . . of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.'" *Castillo*, 866 F.2d at 1083 (*quoting United States v. Bagley*, 722 F.2d 482, 494 (9th Cir. 1985)). "'[W]here the defendant opens the door to an argument, it is 'fair advocacy' for the prosecution to enter.'" *United States v. Williams*, 990 F.2d 507, 510 (9th Cir. 1993) (*quoting United States v. Falsia*, 724 F.2d 1339, 1342 (9th Cir. 1983)).

Thus, if defendant opens the door by implying, arguing, or saying that the United States should have called a particular witness, the United States provides notice that it plans to walk through that door and make the jury aware that the defendant has subpoena power to call the same witness too, including in its rebuttal argument.

## VI.    FORFEITURE

The Superseding Indictment contains two forfeiture allegations giving defendant notice that the United States seeks forfeiture of certain property if he is convicted. If defendant is convicted at trial, the United States expects to seek a money judgment determined by the Court at sentencing under Federal Rule of Criminal Procedure 32.2 rather than pursue forfeiture of any specific asset. Consequently, the jury will not be required to hear a forfeiture phase of the trial if defendant is convicted, and the United States is not providing any forfeiture-related jury instructions or special verdict form. *See* Rule 32.2(b)(1)(A).

## VII.    CONCLUSION

The United States requests leave to supplement this trial memorandum as necessary.

**United States' Trial Memorandum**                                                                    **Page 17**